### James L. BATSON, Sr., Plaintiff–Appellant,

v.

### COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.

#### No. 02–35471.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 2003.*

Filed March 9, 2004.

Fed. R.App. P. 34(a)(2).

Floyd H. Shebley, Floyd H. Shebley P.C., Oregon City, OR, for the plaintiff-appellant.

David J. Burdett, Assistant Regional Counsel, Social Security Administration, Office of the General Counsel, Seattle, WA, for the defendant-appellee.

Before ALDISERT,** GRABER, and GOULD, Circuit Judges.

GOULD, Circuit Judge.

James L. Batson, Sr. appeals the district court's affirmance of the Social Security Commissioner's ("Commissioner's") denial of his application for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act. Batson contends that the decision of the Social Security Administration Administrative Law Judge ("ALJ") that Batson was not disabled as defined by the Social Security Act, and therefore not eligible for Social Security disability insurance benefits, is not supported by substantial evidence and is based on an improper application of legal precedent. We have jurisdiction under 28 U.S.C. § 1291 to consider Batson's appeal. Because substantial evidence supports the ALJ's decision and the ALJ committed no legal error, we affirm.

I

Batson suffers from cervical degenerative disease. On September 3, 1997, Batson underwent cervical surgery in an attempt to relieve his symptoms. Batson believed the surgery to be successful, but eventually his pain and symptoms returned. On October 27, 1998, Batson was terminated from his employment, and he applied for disability insurance benefits on November 2, 1998, alleging an inability to work because of upper and lower back injuries. Batson's claim was denied both initially and upon reconsideration. On Batson's further request, a hearing was then held before an ALJ on October 4, 1999. On October 22, 1999, the ALJ issued a written decision finding Batson ineligible for disability insurance benefits. The Social Security Administration's Appeals Council denied Batson's request for review, and Batson appealed to the United States District Court for the District of Oregon, which by an opinion and order dated April 2, 2002 affirmed the ALJ's determination that Batson was not eligible to receive disability insurance benefits.

■■■ On Batson's appeal, we review de novo the district court's order upholding a decision of the Commissioner denying benefits to an applicant. *Benton v. Barnhart,* 331 F.3d 1030, 1035 (9th Cir.2003). The Commissioner's decision must be affirmed by us if supported by substantial evidence, and if the Commissioner applied the correct legal standards. *Id.* Under this standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, *see Gallant v. Heckler,* 753 F.2d 1450, 1452–53 (9th Cir. 1984), and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision, *see Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir.1999).[1]

To establish whether he qualifies for benefits, Batson has the burden of proving an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impair-

---

** The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Where, as here, the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

ment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set forth a five-step sequential evaluation process for determining whether a claimant has met this standard. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If not, the ALJ then must determine whether the claimant's impairments are "severe" within the meaning of the regulations. *See* 20 C.F.R. § 404.1520(c). If the impairments are "severe," then the ALJ must compare the claimant's impairments to the impairments listed in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If any "severe" impairment equals a listed impairment, the claimant must be found to be disabled. However, if a decision as to whether a "severe" impairment corresponds to a listed impairment cannot be made on medical factors alone, the ALJ must proceed to the final two steps in the sequential evaluation process.

At step four, the ALJ must consider the functional limitations imposed by the claimant's impairments and determine the claimant's residual functional capacity. If the claimant retains the capacity to perform his or her past relevant work, defined as work the claimant has performed in the past fifteen years, *see* 20 C.F.R. § 404.1560(b)(1), the claimant is not disabled. *See* 20 C.F.R. § 404.1520(f). If the ALJ determines that the claimant can no longer perform past relevant work, the ALJ at step five must consider whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(g). If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Id.*

## II

Batson contends that the ALJ's findings that Batson does not have a back impairment under the Listing of Impairments and that Batson is capable of performing light work are not supported by substantial evidence. Batson challenges the ALJ's decision to give only minimal evidentiary weight to the opinions of Batson's treating physicians. Batson also asserts that the ALJ erred in concluding that Batson's subjective pain testimony was not fully credible. Finally, Batson maintains that the ALJ erred in determining that Batson is capable of performing light work based on his residual functional capacity. We review each of these contentions in turn.

## A

■ Batson first alleges that the ALJ improperly discounted the views of claimant's treating physicians Timothy L. Keenen and Lynn A. Kadwell, who both opined that Plaintiff met or equaled the criteria for a Listing found at 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.05C ("Disorders of the Spine").[2] If correct, that finding would mean that a conclusive presumption of disability applies. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (1990); 20 C.F.R. § 404.1520(d). However, an ALJ need not

---

**2.** Listing 1.05C provides in full:
Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and
2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

give controlling weight to the opinion of a treating physician. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

In this case, the ALJ determined that the treating physicians' views carried only minimal evidentiary weight. The ALJ discounted Dr. Keenen's view because it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition, and was based on Batson's subjective descriptions of pain.[3] The ALJ gave minimal weight to Dr. Kadwell's opinion, because it, too, was based on Batson's "subjective complaints without objective evidence," was "conclusionary in the form of a checklist," and "lack[ed] substantive medical findings to support her conclusion." The ALJ also noted that Dr. Kadwell's opinion was based in part on Dr. Keenen's records and findings, the value of which the ALJ had discounted.

The ALJ also discounted the views of Drs. Keenan and Kadwell because of their conflict with the results of a consultative medical evaluation performed by Dr. Bradley Bergquist. Dr. Bergquist examined Batson and determined that Batson's disc herniation had been eliminated with surgery and did not remain a cause of disability. Dr. Bergquist concluded that Batson's symptoms could not be explained on a physical basis, that Batson's inability to work was based solely on his subjective complaints, and that Batson was objectively able to work.

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Greater weight must be given to the opinion of treating physicians, and in the case of a conflict "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." *Id.* These rules were honored, for in this case the ALJ gave specific and legitimate reasons to discount the opinions of Drs. Keenen and Kadwell on the degree of Batson's impairment. Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, *id.*, or by objective medical findings, *Tonapetyan*, 242 F.3d at 1149. Here, the ALJ found this to be true for the opinions of both Dr. Keenen and Dr. Kadwell. We hold that the ALJ did not err in giving minimal evidentiary weight to the opinions of Batson's treating physicians. *See Tonapetyan*, 242 F.3d at 1149; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).

## B

Batson also argues that the ALJ improperly discredited Batson's pain

**3.** The dissent contends (1) that Dr. Keenen's opinion did not rest solely on subjective complaints, and (2) that it is wrong to view one of Dr. Keenen's reports, in isolation, as a checklist. We respectfully disagree. Dr. Keenen's treatment notes do not provide objective medical evidence of the limitations asserted in his report and Dr. Keenen himself wrote that Batson's limitations were based upon Batson's subjective descriptions of pain. And we consider the report submitted by Dr. Keenen to be "brief and conclusionary in form with little in the way of clinical findings to support the conclusion that appellant was totally disabled." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1988) (discrediting medical opinion of treating physician who had prior relationship with claimant where only report in record was in conclusionary form).

testimony. In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). Under the first step prescribed by *Smolen,* which is sometimes known as the *Cotton* test,[4] the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281–82. If this *Cotton* test is satisfied, and if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id.* at 1284.

 Because Batson produced objective evidence that he suffers from cervical degenerative disease, an impairment which can reasonably be expected to produce pain or other symptoms, he satisfied the first step in the *Smolen* analysis. Under the second step, the ALJ was required to analyze the credibility of Batson's testimony regarding the severity of his symptoms.

 When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir.1999). Important to the ALJ's decision were his observations that Dr. Bergquist, a consulting physician, did not believe that Batson's "graphic and expansive" pain symptoms could be explained on a physical basis. Dr. Bergquist also opined that on an objec-

tive basis, Batson's ability to work was not limited. Furthermore, Dr. Bergquist noted inconsistencies during his examination of Batson, including that Batson removed his sweatshirt before the exam in a way that accommodated a greater cervical range of motion than what Batson had claimed. Finally, upon examining the callous formation and embedded dirt on Batson's hands, Dr. Bergquist concluded that Batson's activity level was greater than what Batson had suggested.[5] Thus, the ALJ gave specific and legitimate reasons to believe Dr. Bergquist. *Lester,* 81 F.3d at 830.

For another reason to discredit Batson's testimony, the ALJ noted that Batson claimed to have suffered an injury in October, 1996 but did not receive any medical treatment until May, 1997. Further, the ALJ noted that Dr. Sharon Johnson, another non-treating physician, also opined that the claimant was not fully credible in his account of his symptoms. The ALJ also noted contradictions in the claimant's own testimony about his activities of daily living. Batson claimed that he could not return to work because of pain, yet he also testified that he tends to his animals, walks outdoors, goes out for coffee, and visits with neighbors. Because the ALJ considered the claimant's testimony to be contradictory and unsupported by either the objective medical evidence or any persuasive reports of his doctors, the district court did not err in affirming the ALJ's determinations about Batson's credibility. *See Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir.1997) ("To find the claimant not credible the ALJ [may] rely . . . on internal contradictions in that testimony.").

4. *See Cotton v. Bowen,* 799 F.2d 1403, 1405 (9th Cir.1986).

5. Batson contends that because Dr. Bergquist was hired by a workers' compensation insurance company, he may have been biased in

his evaluation. However, we reject this contention because we have held that "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester,* 81 F.3d at 830.

The views of Drs. Bergquist and Johnson, along with the contradictions from Batson's own testimony and the lack of objective medical evidence supporting Batson's claims, together constitute substantial evidence in support of the ALJ's negative credibility determination of Batson.

The ALJ also said that it was "interesting to note" that Batson had said in questionnaires about his daily living activities that he watched six to ten hours of television a day. The ALJ suggested that if Batson "is capable of sitting watching television, between six-ten hours a day, it is an indication he could be capable of sitting at least six hours out of an eight-hour workday," and that "his impairment would not prevent him from being gainfully employed." The assumption that Batson watched television while sitting is not confirmed by the record; it is possible Batson at times watched television while standing or reclining, or that he changed positions from time to time. Batson contends that on a mistaken assumption about his sitting while watching television, which is not proven by the record, the ALJ concluded that Batson's testimony about his ability to partake in gainful employment was unconvincing.

However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible. *See Curry v. Sullivan,* 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.,* 734 F.2d 1378, 1380 (9th Cir. 1984) (same). In light of the substantial evidence supporting the ALJ's conclusions on Batson's credibility, we do not think that the ALJ's assumption about Batson sitting while watching television affected the ALJ's conclusion or requires remand.

### C

■ Batson also disputes the ALJ's determination that Batson retains the residual functional capacity to perform the exertional demands of light work. Batson maintains that this determination is inconsistent with (1) the opinions of Drs. Keenen and Kadwell that Batson is unable to perform sedentary work on a sustained basis, (2) Batson's own testimony, and (3) the opinion of a vocational expert that Batson is not capable of substantial gainful activity.

As for the opinions of Batson's treating physicians Keenen and Kadwell, we have already explained that it was permissible for the ALJ to give these minimal evidentiary weight, in light of the objective medical evidence and the opinions and observations of other doctors. The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted. *See Johnson v. Shalala,* 60 F.3d 1428, 1433 (9th Cir.1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989).

As for Batson's own testimony, as we explained above, the ALJ with substantial evidence found him not credible.

■ As for the vocational expert, his opinion in part relied on Batson's testimony and the testimony of Drs. Keenen and Kadwell that was given minimal weight by the ALJ. Moreover, even if the vocational expert's views are contrary, that does not negate the substantial evidence in the record as a whole in support of the ALJ's

determination. When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995).

In determining that Batson retained the residual capacity to perform light work, the ALJ incorporated the limitations set forth in a physical capacity evaluation completed by Physical Therapist Claudia Richardson. Based on this evaluation, the ALJ found that Batson suffers from moderate impairments in memory, in the ability to maintain concentration, and in the use of his hands for fine manipulation. The ALJ also determined that Batson can walk about four blocks at a time, stand for one hour, sit for one hour, occasionally lift 10–20 pounds, and drive for 15 minutes at a time. These findings are consistent with Richardson's determination that Batson can lift 26 pounds occasionally, lift 13 pounds frequently, and complete an 8 hour work day given an opportunity to change positions. Taking into account Richardson's observations, the ALJ had substantial evidence to conclude that Batson was capable of performing light work.

### III

Substantial evidence supports the Commissioner's determination and the ALJ committed no legal error.

**AFFIRMED.**

GRABER, Circuit Judge, dissenting.

I respectfully dissent. In my view, the administrative law judge (ALJ) relied on two factors that are not supported by the record. I am not convinced that the ALJ necessarily would have reached the same conclusion under a correct analysis of the record. Accordingly, we should reverse and remand for reconsideration.

1. *Watching Television*

One of the factors on which the ALJ relied in finding Batson's complaints of pain incredible was this:

> [Batson] stated in his Activities of Daily Living (ADLs) and Socialization Questionnaire, dated January 7, 1999, that he watches television or listens to the radio between eight and ten hours. He also stated in the Claimant's Questionnaire, dated September 14, 1999, that he watches television at least six hours a day. Since he is *capable of sitting* watching television, between six-ten hours a day, it is an indication he should be capable of sitting at least six hours out of an eight hour work day and it is not unreasonable to assume his impairment would not prevent him from being gainfully employed.

(Emphasis added; exhibit references omitted.)

As the majority points out, the record does not support that reasoning. Batson never said that he was "sitting" while watching television. It is possible to watch television while lying down, reclining, or standing, as well as while sitting; and at home one can change positions at will.

Moreover, it is hard to imagine an activity *less* indicative of work capability than passively watching television or listening to the radio. The ALJ apparently would condemn every claimant to a world of utter silence if the claimant is expected to prove impairment.

2. *Dr. Keenen's Opinion on Disability*

The ALJ rejected the disability opinion of Dr. Keenen, Batson's treating physician, for the following reasons:

> We [sic] have reviewed Dr. Keenen's report[of June 21, 1999], and give minimal evidentiary weight since Dr. Keenen states these restrictions are based on

the claimant's subjective descriptions of pain.

. . . .

We [sic] have considered Dr. Keenen's report [of September 28, 1999,] and given minimal evidentiary weight because it is in the form of a check list without supportive objective evidence.

Although Dr. Keenen's opinion as a treating physician is acceptable evidence, we have considered all medical reports and given minimal evidentiary weight because of the contradictory statements and assessments of the claimant's medical condition.

(Exhibit references omitted.)

In my view, it is not possible to understand Dr. Keenen's opinion to rest solely on subjective complaints. Nor is it appropriate to view one of Dr. Keenen's reports, in isolation, as a mere checklist. The Social Security regulations make clear that a treating physician's reports are to ˙ be viewed in light of the *entire treatment relationship.* The weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received. 20 C.F.R. § 404.1527(d)(2)(i), (ii).

Batson began to experience pain in his neck and left upper extremity in October 1996. An MRI in 1997 revealed disc herniation, and Dr. Keenen—a Board-certified orthopedic surgeon who completed a fellowship in spinal surgery—*performed surgery on Batson* on September 3, 1997. In an October 1998 examination report, Dr. Keenen discussed a later MRI showing that there "is some protrusion of disc material at the level of the arthrodesis that is potentially causing some of [Batson's] symptoms." On September 14, 1999, Dr. Keenen identified "cervical spondylosis" as "the vertebrogenic disorder" from which Batson suffered. He also reported "significant limitation of motion in the spine,"

muscle weakness, and sensory loss—as well as pain. Dr. Keenen expressly concluded that Batson's physical impairments were reasonably consistent with his symptoms and functional limitations and that Batson had no psychological limitations. Dr. Keenen also referred the reader to his office notes for additional information. Dr. Keenen's office notes state that Batson continued to have neck and upper extremity pain as of January 12, 1999.

It is true that, in response to a request for information regarding Batson's work restrictions, Dr. Keenen wrote: "These restrictions are based on subjective descriptions of pain." But it is only by taking that response entirely out of context that the ALJ could reject Dr. Keenen's opinion as lacking a basis in objective medical findings.

To summarize, Dr. Keenen had treated and examined Batson on many occasions for more than two years, and he performed back surgery on Batson in 1997. The ALJ's stated reasons essentially ignore that significant history when discounting Dr. Keenen's opinion because of the isolated use of a checklist sent to him by someone else.

The ALJ's final error is the grudging statement that a treating physician's opinion is merely "acceptable" evidence. "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari,* 253 F.3d 1152, 1157 (9th Cir.2001); *see also* 20 C.F.R. § 404.1527(d)(2). Even when not accorded controlling weight, a treating physician's opinion is entitled to deference. When contradicted by the opinion of a non-treating physician, the treating physician's opinion "can only be rejected for specific and legitimate reasons that are supported

by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995). The ALJ's quoted rejection of Dr. Keenen's opinion fails to meet that standard.

In conclusion, the ALJ's reasons for rejecting Dr. Keenen's opinion are not supported by substantial evidence in the record as a whole, and one of the ALJ's reasons for disbelieving Batson is not supported by any evidence. Therefore, I would reverse and remand. I respectfully dissent from the majority's contrary conclusion.