William D. KRUCHEK, Plaintiff—Appellant,

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant—Appellee.

No. 03–35908.

D.C. No. CV–02–01461–ALA.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2005.

Decided March 21, 2005.

David B. Lowry, Esq., Portland, OR, for Plaintiff–Appellant.

Craig J. Casey, Esq., USPO—Office of the U.S.Attorney, Mark O. Hatfield, Portland, OR, for Defendant–Appellee.

Before REINHARDT, BERZON, and BYBEE, Circuit Judges.

## MEMORANDUM *

William Kruchek appeals the district court's judgment affirming the denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). He contends that the finding of the Administrative Law Judge (ALJ) that Krucheck was not disabled because he was capable of "mak[ing] a successful vocational adjustment to work which exists in significant numbers in the national economy" is not supported by substantial evidence or free of legal error. We reverse and remand.[1]

## I. Legal Standard for "Disabled"

The five-stage procedure used to evaluate disability claims is set forth in 20 C.F.R. § 404.1520:

█ First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. [2.] If not, the ALJ then must determine whether the claimant's impairments are "severe" within the meaning of the regulations. [3.] If the impairments are "severe," then the ALJ must compare the claimant's impairments to the impairments listed in the "Listing of Impair-

ments".... If any "severe" impairment equals a listed impairment, the claimant must be found to be disabled. However, if a decision as to whether a "severe" impairment corresponds to a listed impairment cannot be made on medical factors alone, the ALJ must proceed to the final two steps in the sequential evaluation process. [4.] At step four, the ALJ must consider the functional limitations imposed by the claimant's impairments and determine the claimant's residual functional capacity. If the claimant retains the capacity to perform his or her past relevant work, defined as work the claimant has performed in the past fifteen years, the claimant is not disabled. [5.] If the ALJ determines that the claimant can no longer perform past relevant work, the ALJ at step five must consider whether the claimant can perform other work in the national economy. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled.

*Batson v. Comm'r*, 359 F.3d 1190, 1194 (9th Cir.2004) (citations to 20 C.F.R. § 404.1520 omitted). The burden of proof is on Kruchek for the first four prongs, but on the agency for the fifth, if the analysis reaches that stage. *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir.1991).

## II. Step–Three Determination

█ Kruchek contends that the ALJ erred at step three both (1) by failing to explain his analysis and (2) by failing to call a medical expert ("ME") to decide whether the claimant's combination of im-

1. As the facts are familiar to the parties, we do not recite them here except as necessary to understand our disposition.

pairments is equivalent to a listed impairment. These claims lack merit.

Kruchek argues that the ALJ improperly and "simply asserts, in conclusory fashion" the step-three determination. On this point, *Lewis v. Apfel,* 236 F.3d 503 (9th Cir.2001), is dispositive. In that case, as here, the ALJ identified the claimant's disorders and then said "[claimant] does not have an impairment or combination of impairments listed in or medically equal to one listed in the regulations." *Id.* at 512. Lewis contended that the ALJ erred by failing to elaborate on this determination. *See id.* at 512, 514. The court held it sufficient that the ALJ analyzed the evidence in the "Statement of the Case." *Id.* at 513. Here, likewise, the ALJ adequately analyzed the evidence in the "Rationale" section of his decision.

Kruchek also contends that the ALJ erred by not calling an ME to make the step-three determination, maintaining that "[i]t is up to the ME and not the ALJ or the District Court to assess medical equivalency based upon the medical evidence." Kruchek's indicated authority, *Lester v. Chater,* 81 F.3d 821 (9th Cir.1995) (as amended), is inapposite on this point. *Lester* states only that the Commissioner must consider these medical conditions at the step-three determination, *see id.* at 829; it does *not* say that the Commissioner must *use an ME to* consider these issues.

Indeed, the regulations are clear in stating that ME opinions regarding the step-three determination are *not* essential. One regulation states: "Administrative law judges *may* also ask for and consider opinions from medical experts on ... whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii) (emphasis added). "May" indicates that use of an ME for the step-three medical equivalency determina-

tion is permissive, not mandatory. Another regulation explicitly provides: "Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity (see §§ 416.945 and 416.946), or the application of vocational factors, *the final responsibility for deciding these issues is reserved to the Commissioner." See* 20 C.F.R. § 416.927(e)(2) (emphasis added).

We conclude that the ALJ did not err in his step-three determination.

III. Formulation of the Residual Functional Capacity (RFC)

■ Kruchek contends that the ALJ erred by ignoring the mental limitations identified by Dr. Chesnutt in formulating Kruchek's RFC. We agree.

Dr. Chesnutt, Kruchek's treating physician, noted that Kruchek suffers from severe Attention–Deficit/Hyperactivity Disorder ("ADHD") and depression. Dr. Chesnutt further noted that such impairments were difficult to control on medication, and that it was difficult to maintain Kruchek's compliance with a medication regime, due both to significant side effects and to the lack of attention to detail inherent in the ADHD condition. Dr. Chesnutt also indicated that the condition would "constantly" interfere with his attention and concentration and that, absent appropriate medication, Kruchek's mental conditions limit his ability to work at an ordinary pace. These observations are consistent with Kruchek's own testimony that he stopped taking his recommended medication, Cylert, for fear of liver failure. Dr. Chesnutt additionally concluded that, without routine medication, Kruchek's mental impairments would preclude

his ability to work even at "low stress" jobs, and that his "mental processing" would limit the pace of his work.

The ALJ failed to account for these limitations in addressing Kruchek's mental RFC. Although otherwise crediting Dr. Chesnutt, the ALJ did not mention Dr. Chesnutt's opinion that these limitations would "constantly" interfere with Kruchek's work, and determined instead that the limitations only precluded Kruchek from jobs that involved "constant, close attention to detail." Moreover, the ALJ relied on Dr. Chesnutt's records as to Kruchek's condition when he took medication as prescribed, but never addressed the references by Dr. Chesnutt—consistent with Kruchek's own testimony—that it was difficult for Kruchek to maintain the medication as prescribed, for reasons relating both to side effects and to his ADHD condition. *Cf. Nichols v. Califano*, 556 F.2d 931, 933 (9th Cir.1977) ("A claimant under a disability need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective ... A patient may be acting reasonably in refusing surgery that is painful or dangerous. Thus, a patient's reasonable fear has been held to justify refusal of treatment.") (internal citations omitted). Further, when posing a hypothetical based on Kruchek's RFC to the vocational expert ("VE"), the ALJ did not include a limitation concerning constant lack of attention and concentration or diminished pace on account of mental processing. The ALJ only used a limitation to repetitive, unskilled work, which could well require attention and concentration as well as normal pace.

The ALJ's failure to include these mental limitations in formulating Kruchek's RFC constitutes reversible error. Dr. Chesnutt's opinion as treating physician is uncontroverted in the record. The ALJ cannot ignore the limitations identified in the opinion absent a statement of clear and convincing reasons for doing so or a finding that such limitations are inconsistent with the substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2). Moreover, the ALJ gave Dr. Chesnutt's opinion "substantial and persuasive weight" because the ALJ presumed Dr. Chesnutt had "the best available knowledge in evaluating the claimant's impairments," "would be in the best position to determine the degree to which these impairments would hamper him in the performance of job-related tasks," and had "the best longitudinal view of the claimant's physical and mental impairments." ALJ Op. at 10. In the face of these endorsements of Dr. Chesnutt's evaluation, the ALJ's failure to consider the mental limitations identified by that evaluation—without clear and convincing reasons for doing so—constitutes reversible error.[2] *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996).

IV. Remand for Award of Benefits

█ "The remaining question is whether to remand for further administrative proceedings or simply for payment of benefits." *Lester*, 81 F.3d at 834. "We may direct an award for benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physi-

---

**2.** As we have decided that the ALJ's formulation of the RFC was in error, we do not reach any of the further issues concerning use of the RFC in the ALJ's step-five determination denying Kruchek's application.

cian, we credit that opinion as a matter of law." *Lester*, 81 F.3d at 834 (internal quotation marks omitted). Crediting Dr. Chesnutt's testimony establishes that Kruchek had mental impairments that "constantly" limited his ability to concentrate and also diminished his pace.

The ALJ relied on testimony from a VE to assess whether there are significant jobs available in the national economy for someone with Kruchek's RFC. The ALJ asked the VE "if somebody is unable to meet the concentration and pace demands of unskilled work, that would eliminate all jobs?" The VE responded "Yes."[3] Given this testimony and the ALJ's reliance on the VE's opinion for the step-five determination, had the ALJ properly formulated Kruchek's RFC, the ALJ would have been compelled to find that there were not significant numbers of jobs available to Kruchek in the national economy.

We therefore hold that Kruchek was disabled throughout the relevant period and that a remand for further proceedings would serve no useful purpose. We reverse the judgment of the district court and remand with instructions to remand to the ALJ for an award of benefits. *See Reddick v. Chater*, 157 F.3d 715, 729–30 (9th Cir.1998) (remanding for an award of benefits where VE testified that if limitations previously excluded by ALJ were considered, claimant would not be able to perform any other work).

REVERSED AND REMANDED FOR AN AWARD OF BENEFITS.

**3.** Also, Kruchek's attorney asked the VE "one of the jobs you discussed was the surveillance systems monitor. Does somebody need to have good concentration in order to maintain that job?" The VE responded "Yes."