**Rebecca A. REINERTSON, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant—Appellee.**

No. 03–35646.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2005.

Decided April 1, 2005.

Elie Halpern & Associates, PS, Olympia, WA, for Plaintiff-Appellant.

David M. Blume, Esq., SSA-Social Security Administration, Seattle, WA, for Defendant-Appellee.

Before: SCHROEDER, Chief Judge, and GOODWIN and GRABER, Circuit Judges.

MEMORANDUM *

Claimant Rebecca Reinertson appeals the district court's decision affirming the Commissioner of Social Security's denial of her application for disability benefits. We reverse and remand.

1. *Credibility Determination*

■ Claimant argues that the adverse credibility determination of the administrative law judge ("ALJ") is not supported by substantial evidence. Because the ALJ determined that Claimant suffered from a severe impairment, fibromyalgia, the "ALJ could then reject her testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003).

A. *Improper Reasons for the ALJ's Credibility Determination*

With respect to Claimant's daily activities, the ALJ noted that Claimant "care[s], alone, for a small child," and "also cooks, cleans and drives." We have held that similar daily activities may be sufficient to discredit a claimant's allegations where the claimant performed those activities "with no significant assistance." *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir.2001). Here, the record shows, and the ALJ acknowledged, that Claimant received significant assistance from her parents in performing her daily activities. In the light of that assistance, the ALJ's assertion that Claimant cares, *"alone,"* for a small child is factually inaccurate. (Emphasis added.)

Further, "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitation would these activities have any bearing on Claimant's credibility." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). Claimant testified that, as a result of her fibromyalgia, simple tasks, such as cleaning her house, that she had been able to perform in a few hours took "6 or 7 hours" and left her feeling "exhausted the next day and [unable to] go any place to do anything." Placed in their proper factual context, Claimant's daily activities are consistent with her subjective complaints of pain and fatigue.

■ The ALJ's determination that financial motivation, or "secondary gain," induced Claimant to exaggerate her symptoms when speaking to her physicians and to the ALJ is premised similarly on factual errors. The ALJ noted that "Claimant was left with two minor children of tender age, rather large credit debts, and no visible source of income." But Claimant has only one child, not two. Further, the record contains no evidence regarding her debts. Even if the ALJ's characterization of the record were accurate, there is no support in the law of this circuit for the proposition that an ALJ may deem a claimant not credible merely because she has a genuine financial need for the benefits that she is seeking. It is difficult to see how any claimant could be found credible under that reasoning. We therefore conclude that the ALJ's "secondary gain" determination is not supported by substantial evidence.[1]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The ALJ also premised his "secondary gain" determination on the fact that Claimant was a single parent and that, if she received bene-

fits, she would be able "to remain at home to raise her children [sic]." That observation is true of any disability claimant who also happens to be a parent and, accordingly, does not constitute substantial evidence supporting the conclusion that a claimant is not credible.

■ The ALJ's reliance on the medical opinions of Dr. Birkeland and Dr. Rodin to reject Claimant's subjective complaints is similarly misplaced. Dr. Birkeland premised his conclusion that there were no objective findings to support Claimant's complaints on his determination that "[t]here are no findings to consider fibromyalgia." Dr. Birkeland's opinion is inconsistent with that of every physician who considered fibromyalgia as a potential source of Claimant's subjective complaints, including all of Claimant's treating physicians. The ALJ stated no reasons for implicitly rejecting those opinions in favor of Dr. Birkeland's opinion that Claimant had no medically determinable impairment. *See Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir.1989) (stating that an ALJ must give clear and convincing reasons for rejecting the opinions of treating physicians). Dr. Birkeland's evaluation is also inconsistent with the ALJ's own conclusion that Claimant's fibromyalgia constituted a "severe" impairment within the meaning of the federal regulations. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Accordingly, the ALJ erred in relying on Dr. Birkeland's opinion that Claimant had "severe functional problems causing her to have very significant subjective complaints with no objective findings."

■ The ALJ also erred in concluding that Dr. Rodin had documented "functional behavior" in his examination notes. Those notes reflect that Claimant had "no outwardly positive Waddell's signs," but that "[s]he does have pain with axial load and on back rotation, which are the positive Waddell's signs." Physicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain. There are five types of Waddell's signs. "[A] finding of three or more of the five types is clinically significant. Isolated positive tests are ignored."

Gordon Waddell et al., *Nonorganic Physical Signs in Low–Back Pain,* 5 Spine 117, 118 (Mar.-Apr.1980); *see also* 5 Attorneys' Textbook of Medicine ¶ 15A.83 (Roscoe N. Gray and Louise J. Gordy eds., 3d ed. 2000) ("While a positive test in one category is not considered conclusive, when three of the five categories are positive, there is a high probability of nonorganic pathology."). Here, Dr. Rodin noted two signs in one category but did not ascribe any significance to those signs. Consequently, the ALJ's conclusion that Dr. Rodin had documented "functional behavior" is not supported by substantial evidence.

B. *Proper Reasons for the ALJ's Credibility Determination*

■ At the hearing, Claimant testified that she used a treadmill for, at most, ten minutes. By contrast, the treatment notes from Claimant's most recent visit to her treating physician state that she used the treadmill for "at least half an hour a day." Claimant attempts to reconcile the two statements by noting that there is no inconsistency between saying that she can use a treadmill for up to ten minutes *at one time* and saying that she can use the treadmill for at least half an hour *each day.* However, " '[w]here ... the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.' " *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). Thus, we must accept the ALJ's interpretation of those two statements and his conclusion that Claimant underreported at least one of her daily activities.

■ The ALJ properly considered Claimant's demeanor during the hearing in rejecting her testimony and subjective

complaints. The ALJ noted that Claimant "moved easily and well, stood and moved to another chair without any distress, and seemed very cogent and intelligent." Although an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, they may form part of that determination. *Fair*, 885 F.2d at 602; *see also Morgan*, 169 F.3d at 600 ("The inclusion of the ALJ's personal observations does not render the decision improper." (internal quotation marks omitted)).

### C. Conclusion

■■ When the erroneous factors on which the ALJ relied are removed from the analysis, his adverse credibility determination rests on two findings: (1) Claimant underreported her treadmill usage, and (2) her demeanor at the hearing was inconsistent with her subjective complaints.[2] We cannot say that "[a]ny error the ALJ may have committed . . . was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that [Claimant's] testimony was not credible." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir.2004). The ALJ relied principally on Dr. Birkeland's medical opinion and the ALJ's own suspicions regarding secondary gain. For the reasons stated above, that reliance is misplaced. We cannot say with any confidence that, in the absence of the factors on which he erroneously relied, the ALJ would have arrived at the same determination regarding Claimant's credibility.

### 2. The ALJ's Evaluation of Medical Evidence

■■ The ALJ rejected the medical opinions of Claimant's treating physicians, Dr. Friesen and Dr. Brown, primarily because those opinions were based on Claimant's subjective complaints, which the ALJ found not credible.[3] "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d at 602 (quoting *Fair*, 885 F.2d at 605). That is particularly true in the case of fibromyalgia, a disease that "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir.2004). As explained above, however, the ALJ erred in his determination that Claimant's subjective complaints were not credible. Accordingly, the ALJ erred in relying on that determination in rejecting the medical opinions of Claimant's treating physicians.[4]

### 3. Lay Testimony

An ALJ "must give reasons that are germane to each witness" in rejecting lay

---

2. The ALJ also mentioned several times that Claimant's treating physicians generally found her to be "in no acute distress" and, therefore, concluded that Claimant's testimony was inconsistent with objective medical evidence. One who suffers from fibromyalgia, a condition marked by "chronic pain throughout the body," *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir.2004), is not necessarily in "acute distress." Without more, that term does not constitute an objective medical finding that is inconsistent with severe fibromyalgia.

3. The ALJ also rejected Dr. Brown's medical opinion because "[o]ne has the impression Dr. Brown started with a conclusion of disability and then proceeded to justify that conclusion." Without specific support, such impressions do not constitute "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995).

4. The ALJ correctly rejected the medical opinion of Claimant's treating naturopathic physician because that physician is not an "accepted medical source" within the meaning of the federal regulations. 20 C.F.R. § 404.1513(a).

testimony. *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993). In rejecting the testimony of Claimant's mother, the ALJ stated that she "was fairly credible but I suspect that she is seeing the same functional behavior that was documented by Dr. Birkeland and Dr. Rodin." As stated above, Dr. Birkeland's finding of "functional behavior" is premised on a refusal to consider fibromyalgia; that refusal is at odds with the weight of medical evidence and the ALJ's own conclusions. Further, Dr. Rodin's records contain no mention of functional behavior or secondary gain. Accordingly, the ALJ's determination that Claimant's mother simply witnessed the same functional behavior, and failed to detect it, compounds the error in the ALJ's analysis of and reliance on those medical opinions.

The ALJ also relied on his conclusion regarding functional behavior in rejecting the testimony of Claimant's supervisor: "I give little evidentiary weight to that testimony, since if the claimant is engaged in functional behavior for secondary gain, one would expect histrionics at work." Although couched in terms that arguably are germane to the witness, the ALJ essentially held that because Claimant had a motivation for secondary gain, no lay witness testimony was reliable. Because of the errors in the ALJ's analysis of secondary gain, his rejection of that testimony was ill-founded and must be reversed.

### 4. *Conclusion*

In view of the substantial factual errors on which the ALJ grounded his credibility determination, we conclude that the ALJ failed to give clear and convincing reasons to support that determination. Further, the ALJ's evaluation of the medical opinions of Claimant's treating physicians and the lay testimony began and ended with his conclusion that Claimant was not credible. We cannot say that the errors in the ALJ's analysis of the record were harmless and, therefore, we must remand with respect to those three issues. Accordingly, we reverse and remand to the agency for reconsideration beginning at step four.[5]

REVERSED and REMANDED.

GOODWIN, Circuit Judge, dissenting.

This appeal presents a very close case for the medical witnesses, the administrative law judge, and for this court. Recognizing that reasonable minds can differ on whether a fact finder's decision is supported by substantial evidence, I respectfully dissent.

The standard of review here, as often, is the determining factor. It is the ALJ who is entrusted by law with the responsibility to evaluate both the medical evidence and the claimant's credibility. *See, e.g., Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir.2004). This case is no exception to the general proposition that the trier of fact is best suited to the resolution of fact-specific issues and credibility questions.

It is my view that the medical and testimonial evidence in this case falls almost equally on both sides of the line. The ALJ would not have erred by concluding that

---

**5.** Claimant argues that the ALJ improperly ignored the vocational rehabilitation evaluation prepared by Donald Uslan. Uslan's evaluation concludes that Claimant is "clearly unemployable" because she is unable to enter the labor market. However, the ALJ concluded that Claimant was not disabled at step four of the evaluation process, at which the only question is "whether the individual can do past relevant work as he or she actually performed it." S.S.R. 96–8p (1996); 20 C.F.R. § 440.1520(a)(4)(iv), (e). Because the issue whether Claimant could perform work that existed in substantial numbers in the national economy was not before the ALJ, the ALJ did not err in ignoring Uslan's report.

the claimant suffers from a severe and downward-spiraling medical condition and is unable to work. Similarly, the ALJ would not have erred by concluding, as this one did, that the claimant is not credible and that it was no coincidence that the escalation of her symptoms neatly paralleled her participation in litigation premised upon her alleged disability. As a result of two automobile accidents, the claimant sought and obtained a significant financial award, and did not work for an extended period. She also received material assistance from her family with child care and other domestic tasks. It was not inappropriate for the ALJ to consider these facts in assessing the claimant's credibility, particularly where, as here, the medical evidence is voluminous and conflicting.

It is my view, and I believe it is the law of this circuit, that a reviewing court properly leaves to the ALJ the evaluation both of the claimant's credibility and of the conflicting medical evidence. Like a jury, the trier of fact must choose amongst the varying assessments of the claimant's condition. *See, e.g., Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted)). The majority disposition reweighs the evidence in a manner inconsistent with our precedent.

I recognize, however, that the ALJ in this case included several minor factual errors in his written decision and expressed possibly unjustified criticism about the claimant's motivation. While this court does not encourage any carelessness with facts, and disapproves unwarranted pejorative comments about a party, it should nevertheless refrain from deciding factual questions properly committed to the administrative agencies and the district courts. I believe the correct standard of review leads to a judgment affirming the decision of the ALJ and the district court.