**Mary L. REYNOLDS, Plaintiff—Appellant,**

v.

---

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Michael J. ASTRUE,* Commissioner of Social Security, Defendant—Appellee.

No. 05–36177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2007.

Filed Oct. 24, 2007.

---

* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

D. James Tree, Esq., Yakima, WA, for Plaintiff–Appellant.

Johanna Vanderlee, SSA—Social Security Administration, Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: B. FLETCHER, BEAM **, and RYMER, Circuit Judges.

### MEMORANDUM ***

Mary Reynolds appeals the district court's judgment in favor of the Commissioner of Social Security's denial of her application for Supplemental Social Securi-

---

** The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

ty Income benefits under Title XVI of the Social Security Act. We affirm.

■■■ We review a district court's order affirming the Commissioner's final decision de novo. *Batson v. Comm'r of SSA,* 359 F.3d 1190, 1193 (9th Cir.2004). The Commissioner's decision must be affirmed unless the Administrative Law Judge's (ALJ) determinations are "based on legal error or are not supported by substantial evidence in the record as a whole." *Schneider v. Comm'r of SSA,* 223 F.3d 968, 973 (9th Cir.2000). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of SSA,* 169 F.3d 595, 599 (9th Cir.1999).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks, in the second step, whether the claimant has a severe impairment (*i.e.,* one that significantly affects his or her ability to function); if so, the ALJ asks, in the third step, whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations; if not, then, in the fourth step, the ALJ assesses the claimant's residual functional capacity (RFC) and asks whether the claimant can perform his or her past relevant work (PRW); if not, the ALJ, in the fifth step, considers the RFC assessment and asks whether the claimant can perform other jobs that exist in substantial numbers in the national economy. *Id.* at § 416.920(a)(4).

Here, Reynolds challenges the ALJ's findings at steps four and five of the five-step sequential evaluation. Specifically, Reynolds claims that the ALJ, in making its RFC assessment, improperly rejected the opinion of Dr. Mauch, D.O., her treat-

ing physician, and failed to take into account her degenerative disc disease, asthma and psychological impairments in the RFC findings. Reynolds also argues that the ALJ failed to make findings regarding the demands of her PRW and her ability to perform PRW. Reynolds further contends that the Commissioner failed to meet the step-five burden of identifying jobs that she could perform.

■■■ First, the ALJ set forth specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mauch's opinion. Where there is a conflict between the opinions of a treating physician and an examining physician, or between the opinion of a treating physician and objective evidence in the record as a whole, the ALJ may disregard the opinion of the treating physician, but only if he sets forth " 'specific and legitimate reasons supported by substantial evidence in the record for doing so.' " *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir.2001) (quoting *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995)). Most notably, the ALJ rejected Dr. Mauch's opinion because the doctor's examinations were largely benign, as they relied almost completely upon Reynolds' subjective complaints (who was found to lack credibility). And, there was little objective evidence to support Dr. Mauch's diagnoses. For example, the ALJ pointed out that although there is evidence that Reynolds may have some degenerative disc disease, the physical examinations do not show any significant symptoms of pain or reduced range of motion. Dr. Mauch consistently noted that Reynolds had no neurological deficit and never referred Reynolds to anyone for further treatment or surgery. At the 1997 hearing, even Reynolds testified that she was unsatisfied with Dr. Mauch because "[s]he hasn't done a ... complete physical," and during Reynolds' visits would merely ask

how Reynolds felt and what kind of pain medication Reynolds wanted. Certainly Reynolds' daily activities (including activities such as cooking, shopping, doing chores, and assisting a wheelchair-bound neighbor) belied any indication from Dr. Mauch that she was only capable of sedentary work.

Reynolds points out that Dr. Mauch's diagnoses always followed the diagnoses of other physicians who either examined Reynolds at the request of Dr. Mauch or otherwise. There is no indication, however, that Dr. Mauch reviewed or considered the results of those examinations when she gave her medical opinion. Restating the diagnosis of another physician does not independently bolster Dr. Mauch's limited examinations and is unpersuasive when we review the strength of Dr. Mauch's opinions. The opinion of examining physician Dr. Damon, that Reynolds had "no functional restrictions," serves as an additional specific and legitimate reason for rejecting Dr. Mauch's opinion, and provides assurance that the record was sufficiently developed with regard to the issue of physical impairments. While Dr. Damon did not review Reynolds' medical records, he found upon physical examination that Reynolds was able to walk without support, walked with a normal gait, and was able to perform a full squatting maneuver satisfactorily. In fact, the ALJ gave Reynolds the benefit of any doubt and credited Reynolds' subjective evidence regarding her restrictions.

■ Reynolds also challenges the ALJ's failure to include her degenerative disc disease, asthma and psychological impairments in its RFC findings. It is true that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,' " because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. Social Security Ruling (SSR) 96–8p. Even so, Reynolds' alleged asthma and disc-related impairments were not outcome determinative and did not materially limit Reynolds. Indeed, Reynolds continued to smoke cigarettes despite repeated medical advice to stop smoking, and, in any event, testing showed that Reynolds' asthma resulted only in mild obstruction of the lungs and without air entrapment.

As to any alleged mental impairment, there was insufficient evidence before the ALJ to suggest the possibility that a medically determinable mental impairment existed. No medical records from after 1987 indicated any such impairments, Reynolds was able to work as a fruit sorter for at least three or four years around 1990, and neither Reynolds nor her attorney mentioned any mental impairment at the two hearings before the ALJ. Thus, the ALJ had no duty to develop the record further in that area. 20 C.F.R. § 416.929(b).

■ Turning to the step-four challenge, while we agree with Reynolds that the ALJ committed legal error in the step-four analysis by failing to make specific findings regarding the demands of her PRW and her ability to meet those demands, *see* 20 C.F.R. § 416.920(f); SSR 82–61, 82–62, that error is harmless given the ALJ's RFC assessment and step-five determination, both of which are supported by substantial evidence in the record. *See Batson*, 359 F.3d at 1197 (applying harmless error standard).

■ In the end, the ALJ's determination at step five regarding the existence of other work that Reynolds could perform given her RFC carries the day. If a claimant does not have the RFC to perform PRW, or if there is no PRW to review, it is the Commissioner's burden at

step five to establish that a claimant can perform other work. 20 C.F.R. §§ 416.920(a)(4)(v) & 416.920(g). The ALJ used a vocational expert (VE) to determine whether Reynolds could use her skills in other work. *See id.* at § 416.966(e). The hypothetical posed to the VE was on target and, on the basis of that hypothetical, the VE testified that there were several jobs at the light and sedentary levels available to Reynolds. Given the ALJ's thorough RFC determination, which reviewed and analyzed all of Reynolds' alleged limitations and not just the one the ALJ deemed severe, the hypothetical posed to the VE at step five was supported by the evidence and sufficient evidence supports the ALJ's step-five determination.

**AFFIRMED.**