NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 18 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LUTHER D. MANERS III,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.    19-35298

D.C. No. 3:18-cv-05205-TSZ

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted May 3, 2021
Seattle, Washington

Before:  CHRISTEN and BENNETT, Circuit Judges, and FRIEDMAN,[**] District
Judge.

Luther D. Maners III appeals the district court's judgment affirming the denial

of supplemental security income and disability insurance benefits by the

Commissioner of the Social Security Administration.  We have jurisdiction pursuant

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Paul L. Friedman, United States District Judge for the
District of Columbia, sitting by designation.

to 28 U.S.C. § 1291, and we review *de novo* the district court's decision and "independently determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). We affirm.

1. Maners argues that the Administrative Law Judge ("ALJ") did not provide sufficient reasons to reject the opinions of Dr. Gritzka, Dr. Heilbrunn, Dr. Fredericks, and Dr. Tan. We disagree. We have held that it is not error for an ALJ to give minimal evidentiary weight to a treating physician's opinion that is "unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

One reason the ALJ afforded Dr. Gritzka's opinion "little to no weight," was because the opinion conflicted with Maners's overall medical record. Specifically, Dr. Gritzka's conclusion that Maners was unable to sustain work because of the severity of his cervical spine condition, neck discomfort, and upper extremity limitations conflicted with Maners's treating neurosurgeon's follow-up analysis that Maners's MRI "looked good" as well as Maners's own reporting that he was "doing great," even though he had some neck stiffness after his second fusion surgery. And several weeks after the surgery, Maners showed grossly intact ("4+/5") bilateral upper extremity strength, intact sensation to light touch in the bilateral upper extremities, and normal gait. In addition, Maners's medical record shows that he

2

was discharged from physical therapy in April 2012—only nine months after his second surgery—after meeting all the goals and outcomes of that treatment. Thus, the ALJ's decision to discount this opinion was supported by substantial evidence in the medical record, and the ALJ did not commit clear error in resolving the conflict between Dr. Gritzka's opinion and the medical record.[1]

With respect to Dr. Heilbrunn's opinion, the ALJ concluded, in part, that "the longitudinal evidence suggests fewer restrictions." Dr. Heilbrunn's physical examination in March 2015 indicated that Maners's upper extremity strength was limited bilaterally on a 3/5 scale. But the record demonstrates that after Maners's August 2011 fusion surgery, his bilateral upper extremity strength was about 4+/5, and by November 2011, it was at 5/5. The record also shows that Maners's upper extremity strength did not diminish, given that Adam Burkey, one of his treating doctors, also recorded bilateral strength at 5/5 in July 2015. Therefore, the ALJ did not err in affording Dr. Heilbrunn's opinion little to no weight.

The ALJ concluded that Dr. Fredericks's opinion "did not contain a completed evaluation with objective findings to substantiate the limitations in the

---

[1] We note it was error to discredit Dr. Gritzka's opinion on the ground that it was improperly influenced by Maners's attorney. The record does not reflect any evidence of actual attorney impropriety, *see Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); rather, the ALJ seems to have improperly discredited the opinion based on the source of the referral, *see id.* Ultimately, because the ALJ's other reasons for discrediting Dr. Gritzka's opinion are proper, this error is harmless. *See Batson*, 359 F.3d at 1197.

opinion" and was "not consistent with the overall medical evidence." Dr. Fredericks opined that Maners "was limited to sedentary tasks with marked limitations in standing, walking, lifting, handling, and carrying." But Dr. Fredericks only found neck pain to an unspecified degree. He made no other clinical findings, and the medical evidence, as a whole, did not support his opinion. Because an ALJ need not accept a medical opinion that is "conclusory, brief, and unsupported by the record," *Batson*, 359 F.3d at 1195, the ALJ did not err in affording no credit to Dr. Fredericks's opinion and relying instead on the longitudinal evidence in Maners's medical record.

Finally, because the basis of Dr. Tan's opinion was the "Orthopedic Evaluation by Thomas Gritzka, MD dated 7/03/12," and because the ALJ properly discounted Dr. Gritzka's opinion, it was appropriate for the ALJ to discount Dr. Tan's opinion. To the extent Dr. Tan's opinion was based on his independent assessment of Maners, we find no error in the ALJ's rejection of his opinion because Dr. Tan "failed to provide sufficient rationale for his opinion."

2. Maners argues that the ALJ erred because he did not provide sufficient reasons to reject Maners's claim "that he could not get comfortable at night and slept only [4.5] hours, leading to daytime fatigue and sleepiness." Citing *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017), Maners contends that it was necessary for the ALJ to point to specific contradictory evidence regarding the

4

sleep disruption and fatigue testimony.  This argument is unavailing.  First, the objective medical evidence does not support that Maners's alleged sleep impairments related to Maners's spine and neck injuries.  In addition, Maners's records in 2010 state that he said he slept poorly as a result of financial concerns.

Second, the ALJ properly discounted Maners's allegations because of the inconsistency in his own statements as well as inconsistencies between his statements and objective medical evidence.  *Cf. Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.").  As one example, Maners informed the agency that he could not perform household chores and needed help with various aspects of self-care, but informed his treating doctors that his functional activity level was 8/10 and that his medication provided 80% pain relief and improved his ability to perform household chores.  And an examining psychologist noted in 2014 that Maners described his typical day as including yard work and use of an exercise bike, and that his hobbies included gold prospecting.  The psychologist also concluded that, based on Maners's reporting, "[h]e doesn't seem to need assistance with self-care."  The ALJ did not err in discrediting Maners's testimony because of his general lack of credibility and because his testimony conflicted with the objective evidence.

3.  Maners contends that the ALJ erred in disregarding the lay testimony

5

allegedly corroborating his claims that he could not sleep more than four or five hours due to shoulder and neck pain. An ALJ can disregard lay testimony if the ALJ provides a germane reason for doing so. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Because the assertions in the lay testimony were generally similar to those of Maners, and because the ALJ properly discounted the relevant parts of Maners's testimony, including because of its inconsistency with the overall medical record, it follows that the ALJ did not err in disregarding the lay testimony for similarly conflicting with the overall medical record.

**AFFIRMED.**