**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARC A. UKOLOV,
              *Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,
              *Defendant-Appellee.*

No. 03-35589

D.C. No.
CV-02-00705-ALA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
December 9, 2004—Portland, Oregon

Filed August 23, 2005

Before: Thomas G. Nelson, Johnnie B. Rawlinson,
Circuit Judges, and William W Schwarzer, District Judge.*

Opinion by Judge Rawlinson

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

11273

**COUNSEL**

Amy Van Horn, Portland, Oregon, for the plaintiff-appellant.

Victoria B. Chhagan (briefed) and L. Jamala Edwards (argued), Assistant Regional Counsel, Seattle, Washington, for the defendant-appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Marc A. Ukolov appeals the district court's judgment affirming the Commissioner of Social Security Administration's (Commissioner) denial of his applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Because we conclude that Ukolov failed to establish the existence of a medical impairment, we affirm the denial of the benefits.

*BACKGROUND*

Ukolov filed applications for disability insurance benefits and supplemental security income (collectively Social Secur-

ity benefits), asserting inability to work due to muscular dystrophy; fibromyalgia; kidney stones; fatigue; and numbness and cramps in his legs and arms.

The Administrative Law Judge's (ALJ) written decision followed the five-step sequential process for determining disabilities established by the Social Security Administration (SSA). *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.* (citation omitted). Step two requires that the claimant have one or more "severe impairments that significantly limit [his] physical or mental ability to conduct basic work activities." *Celaya v. Halter,* 332 F.3d 1177, 1180 (9th Cir. 2003). *See also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step two, the ALJ noted that Ukolov's alleged impairments were "[r]estless leg; weak arms; cramps in his hands and feet; balance problems; pain; feelings of worthlessness; suicidal thoughts; depression; headaches; anxiety; pain in the hips, back and neck; hearing loss; tinnitus; glaucoma in the right eye; fibromyalgia; and a poor memory." Ukolov asserted that, among other things, these impairments caused severe limitations in his hands and also frequent falls. In evaluating the severity of these asserted impairments, the ALJ considered the opinions of various treating and examining medical professionals, including Dr. Gajanan Nilaver, a neurologist.

Dr. Nilaver had been Ukolov's physician since March, 2000, and acknowledged that although "[Ukolov] ha[d] undergone a very exhaustive neurological work-up," she had "not been able to establish a definite neurological diagnosis."[1]

---

[1]Dr. Nilaver opined that Ukolov's symptoms were "most suggestive of demyelinating disease, such as multiple sclerosis." However, Ukolov was not diagnosed with multiple sclerosis, and neurological examinations ruled out demyelinating disease.

The Appeals Council of the SSA denied Ukolov's request for review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004). Ukolov then sought relief in the district court, which affirmed the ALJ's denial of benefits. Ukolov now appeals the district court's decision on the basis that the ALJ erred by failing to find him disabled based on his tendency to fall down, as reflected in his medical records.

## STANDARD OF REVIEW

"We review de novo the district court's order affirming the Commissioner's denial of benefits." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation omitted). "We may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation and internal quotation marks omitted). "The claimant carries the initial burden of proving a disability." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). Failure to prove disability justifies a denial of benefits. *See Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995).

## DISCUSSION

**[1]** "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195 (citation omitted).

**[2]** Ukolov asserts that the ALJ erred in not addressing Dr. Nilaver's statement regarding Ukolov's gait and imbalance difficulties. However, Dr. Nilaver's statement was insufficient to establish the existence of any medically determinable impairment that would entitle Ukolov to Social Security benefits.

**[3]** To qualify for benefits, Ukolov must be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added); *see also* 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques*." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added).

**[4]** In Social Security Ruling (SSR) 96-4p, the SSA explained what is needed under SSA regulations to show a medically determinable impairment. SSR 96-4p, 1996 WL 374187 (July 2, 1996).[2] The ruling clarified that "[a]lthough the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Id*. at *1 (footnote omitted); *see also* 20 C.F.R. §§ 404.1508, 416.908. The ruling noted the distinction between symptoms and signs: "symptoms . . . are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . . . [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by

---

[2] "SSRs do not have the force of law" but "represent the Commissioner's interpretation of the agency's regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). We therefore "give them some deference" as long as they are consistent with the Social Security Act and regulations. *Id*. (citation omitted). SSR 96-4p is consistent with the purpose of Title II and XVI of the Social Security Act to provide financial assistance to those who are disabled. *See Kildare v. Saenz,* 325 F.3d 1078, 1080 (9th Cir. 2003).

medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.' " SSR 96-4p, 1996 WL 374187, at *1 n.2; *see also* 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). The ruling then reemphasized the importance of objective medical evidence to a determination of disability:

> [R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. . . . In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.

SSR 96-4p, 1996 WL 374187, at *1-2.

**[5]** Under these standards, Ukolov can only establish an impairment if the record includes signs — the results of "medically acceptable clinical diagnostic techniques," such as tests — as well as symptoms, *i.e.*, Ukolov's representations regarding his impairment.

**[6]** Dr. Nilaver's letter, addressed "To Whom It May Concern," fell far short of what is required to establish an impairment. Indeed, it did not even purport to opine as to the existence of an impairment for purposes of obtaining Social Security benefits. Dr. Nilaver's restatement of Ukolov's symptoms regarding his gait and balance difficulties did not even speak to the existence of an impairment. Additionally, Dr. Nilaver's records contain no reference to results from "medically acceptable clinical diagnostic techniques" that would support a finding of impairment. *See* SSR 96-4p, 1996 WL 374187, at *1 n.2. Dr. Nilaver reported Ukolov's subjec-

tive complaints, including "gait ataxia,"[3] balance problems, dizziness, "limitations with regards to sustained ambulation," and "increased tendency to fall." These portions of the records do not support a finding of impairment because they are based solely on Ukolov's own "perception or description" of his problems. *Id.*; 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

Other portions of Dr. Nilaver's records purport to describe as "objective findings" the following: a "casual gait remarkable for a wide-based stance," "difficulty with tandem walk[-ing]," and "a mild high steppage on the right side." However, Dr. Nilaver admitted that no "precise etiologic diagnosis" had been made, and she specifically noted that there was "insufficient evidence to make a diagnosis of multiple sclerosis."

[7] Dr. Kimberly Goslin, another neurologist, made similar notations regarding Ukolov, including "weakness in the distal lower extremities" and a positive Romberg test.[4] Although these observations are labeled as "objective," and although Romberg results are test results, Dr. Goslin's observations did not include a diagnosis or a finding of impairment.

[8] At first blush, it might appear that the positive Romberg test sufficiently bolstered Ukolov's claim of impairment. However, the Romberg test is susceptible to subject manipulation, as the individual can control the extent of his unsteadiness. This eventuality is borne out by the notations of Ukolov's examiners indicating that his unsteadiness was more pronounced when he was aware that he was being observed. Additionally, other Romberg tests administered to Ukolov, including one by Dr. Nilaver, produced negative results.

---

[3]"Ataxia" is "[a]n inability to coordinate muscle activity during voluntary movement." *Stedman's Medical Dictionary* 161 (27th ed. 2000).

[4]In a Romberg test, the subject stands "with feet approximated . . . [and] with eyes open and then closed." *Stedman's Medical Dictionary*, at 1640. "[I]f closing the eyes increases the [subject's] unsteadiness, . . . the sign is positive." *Id.*

**[9]** In any event, unlike results from a blood pressure screening, an electrocardiogram (measuring heart rate), an electroencephalogram (measuring brain activity), diagnostic Magnetic Resonance Imaging (MRI), a Computer Axial Tomography (CAT) Scan (a three-dimensional targeted x-ray),[5] or other objective diagnostic techniques, a single positive Romberg result, unaccompanied by a diagnosis or finding of impairment, does not and cannot establish the existence of a disability. Indeed, SSR 96-6p provides that a medical opinion offered in support of an impairment must include "symptoms [and a] *diagnosis*." *See* SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) (emphasis added). Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability. *See Celaya,* 332 F.3d at 1180 ("Step two disqualifies those claimants who do not have one or more severe impairments."). Under such a circumstance, the ALJ committed no legal error in finding lack of impairment at step two of the process. *See Ball v. Massanari,* 254 F.3d 817, 823 (9th Cir. 2001) ("[I]f the claimant's ailment does not pass step 2, . . . it is not disabling.").[6]

**AFFIRMED.**

---

[5]Schmidt, J.E., *Attorneys' Dictionary of Medicine* (1999 ed.), vol. 2, E-43, 48, C-390; vol. 4, M-14; vol. 3, I-26; vol. 2, D-102; vol. 1, A-646; vol. 6, T-152.

[6]Because the testimony of the lay witnesses encompassed only symptoms, any failure of the ALJ to adequately address that testimony does not affect the outcome of this case.