**Rodney PERKINS, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

**No. CV 06–4810–RC.**

United States District Court, C.D. California.

Jan. 30, 2008.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

988

Jerry Persky, Jerry Persky Law Offices, Los Angeles, CA, for Plaintiff.

Assistant U.S. Attorney LA–SSA, Office of the General Counsel for Social Security Adm., San Francisco, CA, Cedina M. Kim, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Rodney Perkins filed a complaint on August 4, 2006, seeking review of the Commissioner's decision denying his applications for disability benefits. On January 9, 2007, the Commissioner answered the complaint, and the parties filed a joint stipulation on February 26, 2007.

## BACKGROUND

Plaintiff, who was born on November 30, 1964, is currently 43 years old. A.R. 48, 342, 357. He has attended two years of college, received training as an auto mechanic, in law enforcement and as a cook, and has previously worked as a dispatcher, food service worker and a security guard. A.R. 60–65, 74–81, 89–96, 105–06, 108, 112, 357–61, 387–89. On June 23, 2004, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since October 24, 1999, due to back pain. Certified Administrative Record ("A.R.") 48–50, 104, 342–44. The plaintiff's applications were denied on October 15, 2004. A.R. 26–30. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Alexander Weir III ("the ALJ") on December 1, 2005. A.R. 31–32, 347–401. On February 6, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 11–24. The plaintiff appealed this decision to the Appeals Council, which denied review on May 2, 2006. A.R. 5–10.

## DISCUSSION

### I

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.2007); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir.2007).

■ "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.1998); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir.2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 1068, 169 L.Ed.2d 808 (2008); *Lingenfelter*, 504 F.3d at 1035.

■ The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir.1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff **has** engaged in substantial gainful activity since October 24, 1999, the alleged onset of disability. (Step One). Specifically, the ALJ found plaintiff engaged in substantial gainful activity from June through November 2003, and, thus, further found plaintiff was not disabled on or before November 30, 2003. A.R. 22. The ALJ then found plaintiff has "severe" degenerative disc disease (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined

plaintiff is able to perform his past relevant work as a hospital food service worker, maintenance dispatcher, surveillance monitor and security guard, and, therefore, further found plaintiff is not disabled. (Step Four).

## II

■ The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen,* 80 F.3d at 1290; *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005). Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir.1994).

■ A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. *Webb,* 433 F.3d at 686; *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir.2001); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out,

and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *Webb,* 433 F.3d at 686. If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari,* 253 F.3d 1152, 1160 (9th Cir.2001) (emphasis in original); *Webb,* 433 F.3d at 686.

■ Here, the plaintiff contends the ALJ erred in Step Two in failing to find his headaches are a severe impairment. *See* A.R. 18–20 ("The medical evidence does not show the existence of any ... medically determinable ... impairment [other than degenerative disc disease] that has lasted or could be expect[ed] to last at least 12 continuous months." A.R. 18–20).

The medical record shows the following evidence regarding plaintiff's headaches. In 1992, plaintiff was struck in the head with a brick, necessitating left eyebrow surgery and plate placement, and plaintiff had subsequent surgery in 1998 to remove broken plates and place a bone graft. A.R. 201, 213. The plaintiff has residual scarring of the left eyebrow area and swelling of the forehead area accompanied by headaches. *Id.*

When Dennis Ainbinder, M.D., evaluated plaintiff on November 22, 2000, and again on April 25, 2001, for a work-related lower back and groin injury, plaintiff's headaches were not discussed, other than as historical information. *See* A.R. 198–222. It was not until January of 2003, when plaintiff was hospitalized at Cedar–Sinai Medical Center, that plaintiff received the first significant treatment for

his headaches since the 1998 surgery.[2] At the time, plaintiff was diagnosed with left frontal sinusitis with marked soft tissue swelling directly over the left frontal area, which was very tender to palpation. A.R. 131, 251–56. A CT scan revealed a bone graft to the left frontal area with opacification of the frontal sinus, as well as a defect in the floor of the left frontal sinus going into the left superomedial orbit with slight soft tissue swelling over the left to medial orbit, and subtotal opacification of the right maxillary sinus. A.R. 251, 283–84. The plaintiff was placed on intravenous antibiotics for several days, the swelling decreased, and plaintiff was discharged from the hospital after 3 days. A.R. 251.

On October 4, 2004, Nick Mashour, M.D., examined plaintiff, who complained of frequent headaches, which were worse at night and were occasionally associated with dizziness. A.R. 141–45. Dr. Mashour found the neurological examination of plaintiff was grossly normal; nevertheless, he recommended plaintiff should be "restricted from working [at] heights or [with] heavy machinery[,]" since plaintiff's headaches were associated with dizziness.[3] A.R. 145. Since December 1, 2004, Kevin Brown, M.D., has treated plaintiff, whom he diagnosed with chronic headaches secondary to trauma and as status-post bone graft on the left side of his head. A.R. 223–24, 301–05. On October 13, 2005, Dr. Brown diagnosed plaintiff with acute sinusitis. A.R. 301. Similarly, on November 11, 2005, plaintiff complained to Castoria Seymore, Jr., M.D., of constant headaches, and Dr. Seymore diagnosed plaintiff as status-post left orbital fracture. A.R. 317, 320.

The foregoing medical evidence shows plaintiff has been diagnosed with headaches and, one occasion in January 2003, was hospitalized for three days for sinusitis. However, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993); *see also Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.1999) ("Although [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.' "). Here, there is absolutely no evidence demonstrating plaintiff's headaches in any manner impact plaintiff's ability to perform basic work activities. *Cf. Burch,* 400 F.3d at 683 ("Even on appeal, [claimant] has not pointed to any evidence

2. Most of the records from Cedars–Sinai were provided to the Appeals Council after the administrative hearing, and not viewed by the ALJ. A.R. 225–335. Nevertheless, since the Appeals Council affirmed the decision of the ALJ denying benefits to plaintiff, the additional evidence is part of the record on review to this Court. *Lingenfelter,* 504 F.3d at 1030 n. 2; *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir.), *cert. denied,* 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996).

3. Dr. Mashour opined plaintiff: "should be able to stand and walk for six hour[s] in an eight [-]hour [ ] day. The [plaintiff] can sit for six hours in an eight [-] hour day. The [plaintiff] can lift and carry 50 pounds occasionally and 25 pounds frequently." A.R. 145. The ALJ adopted these limitations in his assessment of plaintiff's residual functional capaci-

ty. A.R. 22–23. Although the ALJ did not preclude plaintiff from working at heights or around moving machinery, plaintiff's past relevant work as a hospital food service worker, maintenance dispatcher, surveillance monitor and security guard, A.R. 22–23, does not require working at heights or around moving machinery. *See* U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* 45–46, 337, 367 (1993) (hospital food service worker, maintenance service dispatcher, surveillance system monitor and security guard occupations do not require working at heights or around moving machinery). Therefore, any possible error in this regard was harmless. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

of functional limitations due to obesity which would have impacted the ALJ's analysis."). Moreover, since plaintiff engaged in substantial gainful activity for a six-month period between June and November 2003, plaintiff had recovered sufficiently to return to work following his brief hospitalization in January 2003. As such, plaintiff has not met his burden of demonstrating his headaches constitute a severe impairment, and the ALJ's finding that they do not is supported by substantial evidence. *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir.2005); *Verduzco*, 188 F.3d at 1089.

## III

■ A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir.2001); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir.1989). Here, the ALJ found plaintiff retains the RFC to perform medium work,[4] including his past relevant work as a hospital food service worker, maintenance dispatcher, surveillance monitor and security guard. A.R. 22–23. The plaintiff, however, contends the ALJ's determination is not supported by substantial evidence because the ALJ erroneously found plaintiff was not a credible witness.

The plaintiff testified at the administrative hearing that he is unable to work because of his headaches and neck and low back pain. A.R. 361–62. The plaintiff stated he experiences headaches about 3 or 4 times a week, and they are triggered by smells, such as colognes or perfumes, and by light. A.R. 364–65. The plaintiff also stated his headaches sometimes last all day; however, on other occasions, Tylenol will reduce the headache for about an hour. A.R. 365. When his headaches are at their worst, plaintiff must go to sleep or hold his head and rock. A.R. 366. The plaintiff also testified he had four plates put into his head in 1992 to repair a broken sinus passage; however, the plates were subsequently removed in 1998. A.R. 362–63. The plaintiff stated that after the plates were removed, his face would swell up about twice a week and, in 2003, the bone graft collapsed and he was treated at Cedars–Sinai. A.R. 363–64.

The plaintiff testified he experiences daily lower back pain since injuring his back in 1999, and he describes the pain as sharp left-sided lower back pain, which radiates to his left hip, knee and foot and causes tingling in his left toes. A.R. 367–68. The plaintiff also stated he had surgery on his lower back in 2000 or 2001. A.R. 370. More recently, plaintiff stopped working as a security guard because of his back problems and because he has problems walking on concrete.[5] A.R. 359, 378. Further, plaintiff testified that, because of his back pain, he can walk only about a block, he can stand only for approximately 10 minutes, and he cannot sit comfortably, but must get up and move after sitting for less than one hour; and he needs to lie down for about two hours a day after driving his children to school. A.R. 370–73. The plaintiff opined he could not work even if allowed to switch positions for six hours a day. A.R. 372. Finally, plaintiff reported his medication causes itching in his joints, and he uses the restroom about 7–8 times a day. A.R. 375.

---

4. Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

5. The plaintiff subsequently admitted his employment was terminated after he took time off to care for his sick father and never returned to work. A.R. 379–80.

■] Once a claimant has presented objective evidence he suffers from an impairment that can cause pain or other nonexertional limitations,[6] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.1991) (en banc); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004). Rather, if the ALJ finds the claimant's subjective complaints are not credible, he " 'must provide specific, cogent reasons for the disbelief[,]' " *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006) (citations omitted); *Moisa*, 367 F.3d at 885, and, if medical evidence establishes an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggests the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999); *Parra*, 481 F.3d at 750.

■ ] The ALJ found plaintiff's testimony was not credible for several reasons. First, the ALJ found plaintiff's claims were belied by his substantial gainful activity in 2003, after his disability allegedly commenced. A.R. 21. Evidence that a claimant actually worked during a period of claimed disability clearly supports an adverse credibility determination. *See,* e.g., *Greger*, 464 F.3d at 972 (ALJ provided clear and convincing reasons for reject-

ing claimant's subjective testimony, including claimant continuing to work "under the table" after his date last insured); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005) (claimant's work as a part-time kitchen helper during period of claimed disability diminished her credibility since "[w]orking generally demonstrates an ability to perform a substantial gainful activity").

■ ] Additionally, the ALJ concluded plaintiff's testimony was not entirely credible in light of "the discrepancies between the [plaintiff's] assertions and information contained in the documentary reports" and "the reports of the treating and examining practitioners and the findings made on examination." A.R. 21. An ALJ can properly base an adverse credibility determination on inconsistencies between a claimant's complaints and the clinical findings. *Burch*, 400 F.3d at 681; *Morgan*, 169 F.3d at 599–600. Here, for instance, the ALJ stated:

> The [plaintiff] did undergo surgery for his alleged back impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the [plaintiff's] favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms.

A.R. 21.[7] Indeed, plaintiff underwent an intradiscal electrothermal annuloplasty surgical procedure on October 31, 2000, A.R. 171–73, which improved plaintiff's condition to the point that, on January 10,

6. "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." *Swenson v. Sullivan*, 876 F.2d 683, 687–88 (9th Cir. 1989).

7. The ALJ also found plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled indi-

vidual. Although [plaintiff] has received treatment for his allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." A.R. 21. This is not true in light of plaintiff's back surgery, treatment by lumbar facet blocks and epidural steroid injections, and referrals to several pain management clinics, A.R. 167–97, 313–35, and the Court does not rely on this unsupported reason in affirming the ALJ's adverse credibility determination.

2001, he had little to no pain at rest and his treating physician, Noel Lee Chun, M.D., removed all "physical restrictions on the [plaintiff's] activities as long as the activities he engages in are not actually overtly painful." A.R. 167. Moreover, on April 25, 2001, Dr. Ainbinder opined plaintiff was able to work with restrictions. A.R. 205. The ALJ could properly consider these discrepancies between plaintiff's testimony and the physicians' opinions in determining plaintiff's testimony about his back was not entirely credible. *Burch*, 400 F.3d at 681; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004); *see also Lenhart v. Astrue*, 2007 WL 3194786, *1 (9th Cir.2007) (Unpublished Disposition) (ALJ's credibility determination is supported by substantial evidence, including that claimant's claims were inconsistent with the generally successful surgery performed on him and that claimant's treating physician had released him to return to work).[8]

■■■ Furthermore, the ALJ noted plaintiff's complaints about not being able to walk more than one block, not being able to stand more than 10 minutes and not being able to sit more than an hour are not supported by any objective findings. A.R. 21. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, since no physician opined plaintiff is as limited as plaintiff maintains or is disabled by his condition, *see,* e.g., A.R. 141–53, 163, 205, this is a proper basis for the ALJ's adverse credibility determination.[9] *See Matthews*, 10 F.3d at 680 (substantial evidence supports finding can do narrow range of medium work where no examining physician concluded claimant is totally disabled). Thus, the Court finds "[t]he ALJ gave specific, clear and convincing reasons for discounting [plaintiff's] testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.2002); *Burch*, 400 F.3d at 681.

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

---

**8.** *See* Fed. R.App. P. 32.1(a); Ninth Circuit Rule 36–3(b).

**9.** The ALJ also stated that plaintiff "betrayed no evidence of pain or discomfort while testifying at the hearing.... [T]he apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the [plaintiff's] allegations and the [plaintiff's RFC]." A.R. 21. Although " '[t]he inclusion of the ALJ's personal observations does not render the decision improper[,]' " *Morgan*, 169 F.3d at 600 (citations omitted); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.2007), "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at

the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible." *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984). Therefore, the Court also does not rely on this reason in affirming the ALJ's adverse credibility determination. Nor does the Court rely on the ALJ's assessment of plaintiff's daily activities, which does not accurately reflect the evidence presented. *Compare* A.R. 21 *with* A.R. 68–73, 372–75. Nevertheless, the Court finds the other reasons the ALJ proffered for the adverse credibility determination are supported by substantial evidence and are sufficient to affirm that determination.

## JUDGMENT

IT IS ADJUDGED that Judgment shall be entered in favor of defendant.