LEAVY, Circuit Judge,
dissenting.
The ALJ, applying the standard legal framework, determined that Dale was not “disabled” as defined in the Social Security Act. The Act defines “disability” as the “inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.” 42 U.S.C. § 423(d)(1)(A) (emphasis added); see also 42 U.S.C. § 1382c(a)(3)(A). A “physical or mental impairment” is one that “results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.” 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added). See Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir.2005) (quoting same).
Nurse practitioner Laurie Beeson was one of several employees of the Multno-mah County Health Department who treated Dale’s impairments. The ALJ stated in his findings of fact:
Treatment notes from Multnomah County Health Department show the claimant carrying diagnoses for various mental impairments, including panic disorder, generalized anxiety, depressive disorder, and posttraumatic stress disorder. (Exhibit 2F). These assessments were made by non-physician treatment providers and do not include any objective testing.” [1] (emphasis added).
In evaluating the severity of mental impairments, the ALJ is required to “specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the findings].” 20 C.F.R. §§ 404.1520a(b)(l), 416.920a(b)(l) (emphasis added). The ALJ noted that Dale received mental. health treatment from Western Psychological & *947 Counseling Services with a diagnosis summary by a psychologist who listed the diagnoses of generalized anxiety disorder and panic disorder with agoraphobia.
As a general matter, a nurse practitioner is an “other source” for the purposes of medical testimony, see 20 C.F.R. § 404.1513(a) & (d), and, as such, the ALJ is entitled to give less weight to an “other source” medical opinion by providing “reasons germane to each witness for doing so.” Turner v. Comm’r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir.2010) (internal quotations omitted). The “reasons germane to the witness” standard originated in Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993), and is applied to review “other source” as well as lay evidence. See, e.g., Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir.2015) (nurse practitioner); Bayliss, 427 F.3d at 1218 (lay witness). The ALJ stated that Beeson “normally would not be an acceptable source to proffer a medical opinion.” The ALJ nevertheless considered Beeson’s opinion because the ALJ stated “[Beeson] has a treating relationship with the claimant.”
Beeson’s opinion consisted of a cheek-the-box questionnaire created and supplied by Dale’s attorney. The 5-page questionnaire assessed Dale’s residual functional capacity and covered physical limitations followed by mental limitations. Beeson checked the various boxes for most of her answers and gave several brief explanations for other answers. Beeson checked a box indicating that Dale’s attention and concentration would be impaired to such a degree that she could not be expected to perform even simple work tasks for 20 percent of the work week. Beeson also checked a box indicating that she expected Dale to miss 16 hours or more per month from even a simple and routine sedentary job because of Dale’s anxiety and posttrau-matic stress disorder. Beeson cited no supporting medical evidence. When asked to state “findings that support your opinion” as to Dale’s anxiety disorders, Beeson left the answer blank, which was consistent with the ALJ’s finding that the Mult-nomah County Health Department did not perform objective testing of Dale’s mental impairments.
Dale contends “The ALJ’s failure to expressly reject or account for Nurse Bee-son’s findings that Ms. Dale could only perform occasional handling, would be off task for 20 percent of the time, and would miss more than two days of work per month (‘manipulative and mental limitations’) is the dispositive issue and constitutes reversible error.” (emphasis added).
The ALJ committed no legal error by discounting Beeson’s opinion because the ALJ determined that Beeson’s treatment notes did not support her proposed degree of exertional and postural limitations, and the mental assessments from non-physician treatment providers (including Beeson’s opinion as to Dale’s mental impairments) were unsupported by clinical evidence. See Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir.2012) (ALJ permissibly discounted the nurse practitioner’s check-off report that failed to provide supporting reasoning or clinical findings); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005) (ALJ properly rejected a doctor’s opinion as to the claimant’s mental impairment because the opinion was not supported by clinical evidence); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001) (ALJ need not accept a medical opinion if it is inadequately supported by clinical findings). Accordingly, the ALJ properly accounted for and discounted Beeson’s entire opinion.
The “majority holds that the ALJ erred in discounting Beeson’s entire opinion when the ALJ “has divided the opinion into distinct parts and only one of those *948 parts is inconsistent with other objective evidence in the record.” I disagree. The division of Beeson’s opinion in this case originated in the format supplied by-Dale’s attorney, which tracks the categories set forth in the regulations for residual functional capacity. Beeson’s opinion as to Dale’s extertional and postural limitations was inconsistent with her own treatment notes. Beeson’s opinion as to Dale’s manipulative and mental limitations, specifically regarding the “dispositive” issue of Dale’s work absenteeism, is pure conjecture and relies only on Dale’s self-reported symptoms. See Bayliss 427 F.3d at 1217 (the ALJ properly rejected an opinion rendered on the basis of subjective complaints); Ukolov, 420 F.3d at 1005 (discussing the requirement of objective medical evidence to a determination of an impairment).
Because the ALJ gave specific, supported, and germane reasons for discounting Beeson’s opinion, the Commissioner’s decision denying benefits should be affirmed. Even assuming possible merit in the majority’s requirement when an ALJ divides “other source” testimony into “distinct parts,” that situation is not present in this case. Here, the ALJ correctly determined that the mental impairment assessments from a non-physician treatment provider were unsupported by objective medical evidence.

. Beeson’s treatment notes dated in April 2011 stated that Beeson had last seen Dale two months earlier. Dale told Beeson that she made the current appointment because "she is applying for disability and [was] advised by her lawyer she is not coming in frequent [sic] enough.”