**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DENISE SALAZ, | No. 14-15699 |
| Plaintiff - Appellant, | D.C. No. 2:13-cv-00704-SRB |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted April 11, 2016
San Francisco, California

Before: WALLACE, SCHROEDER, and N.R. SMITH, Circuit Judges.

Denise Salaz appeals the district court's order affirming the denial of her

application for disability insurance benefits and supplemental security income. We

review the administrative law judge's (ALJ) decision without deference to the

district court. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The ALJ's decision is not supported by substantial evidence or free of legal error. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Therefore, we vacate and remand for further proceedings.

1.      The ALJ did not provide "clear and convincing" reasons—supported by substantial evidence—for giving minimal weight to the opinions of Salaz's two treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ was required to articulate "clear and convincing" reasons for rejecting any portion of either treating physician's opinion because she did not find that either opinion was contradicted by another physician's opinion.[1] *See id.*; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ gave minimal weight to the treating physicians' opinions on the basis that they were not well-supported by evidence in the record. However, finding that a treating physician's opinions are not "well-supported" by medical evidence merely relieves the ALJ from having to give the physician's opinions "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2), (d)(2); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

---

[1] Even if the ALJ had found that the treating physicians' opinions were contradicted by other physicians' opinions, the ALJ still would have been required to provide "'specific and legitimate reasons' supported by substantial evidence in the record" before rejecting them. *Lester*, 81 F.3d at 830.

The ALJ further explained that the treating physicians' opinions were "inconsistent with the evidence in the record." However, the ALJ only pointed to two places in the record that were allegedly inconsistent with the treating physicians' opinions: (1) one physician's statements encouraging Salaz to diet and exercise to accomplish weight loss and (2) Salaz's reported improvements with treatment. Neither fact is convincing. First, the record shows that, although Salaz was encouraged to lose weight, her physician recommended diet and low impact exercises that would not require her to stand or walk for more than two hours per day. Second, although Salaz reported intermittent improvement with regard to her allegedly disabling symptoms, the record shows that none of the improvements were significant or lasting.[2]

2.    The ALJ provided specific reasons for finding Salaz not fully credible, but those reasons are not convincing, because they lack support in the record. *See*

---

[2] The dissent cites additional evidence—not relied on by the ALJ—to contradict the treating physicians' opinions. However, the dissent characterizes the treating physicians' opinions and the medical evidence in the record differently than we do. For instance, Salaz's physician did not opine that Salaz had three irritable bowel syndrome (IBS) episodes per day with each episode lasting three hours (an opinion that *would* have been an exaggeration). The physician opined that Salaz had IBS symptoms three times per day and that *together* Salaz's IBS symptoms and her fibromyalgia pain lasted more than three hours per day. Salaz's physician's opinion is consistent with Salaz's explanation of her symptoms and her daily activities (which appear to revolve around her IBS symptoms). Further, the record shows that Salaz took medication for IBS throughout the relevant period.

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). We agree that the

medical record contains some evidentiary gaps. However, the existing medical

evidence does not contradict Salaz's pain and symptom testimony, as the ALJ

claims. Rather, Salaz's testimony is largely consistent with the medical records, her

treating physicians' opinions, and her daily activities. Although Salaz continued to

work from home after quitting her last job, the ALJ failed to establish that Salaz's

at-home work responsibilities were inconsistent with a disability finding.

3.      Although the ALJ's findings are not supported by substantial evidence, it is

not clear from the record that Salaz is entitled to benefits. *See Garrison*, 759 F.3d

at 1019. Some "essential factual issues" remain to be resolved. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Therefore, we

believe "additional proceedings [could] remedy defects in the original

administrative proceeding." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v.

Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). In particular, the ALJ should: (a)

"conduct an appropriate inquiry" to determine the basis of Salaz's treating

physicians' opinions before evaluating them, *Smolen v. Chater*, 80 F.3d 1273,

1288 (9th Cir. 1996); (b) explain the extent of her reliance on the opinions of the

three Social Security Administration medical examiners (referenced only by the

district court); (c) determine the extent of Salaz's at-home work duties (to establish

whether that work was inconsistent with her symptom allegations); and (d) determine whether the medical evidence supports a finding that Salaz could remain physically and mentally available for the extent of an eight-hour work day.

4.      Because the ALJ erred by failing to give clear and convincing reasons for rejecting aspects of Salaz's treating physicians' opinions and Salaz's symptom testimony, we vacate the residual functional capacity selected by the ALJ and remand for further proceedings.

The parties shall bear their own costs.

**VACATED AND REMANDED.**

*Salaz v. Colvin*, No. 14-15699

WALLACE, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that the case should not be returned for judgment, but dissent from its conclusion that the case should be returned to the Administrative Law Judge (ALJ). In my view, the ALJ provided clear and convincing reasons to credit only some portions of treating physicians Drs. Fairfax and Benjamin's opinions; the ALJ's conclusion that Salaz's symptom testimony was not credible was supported by substantial evidence in the record; and the ALJ's residual functional capacity (RFC) assessment was sufficiently specific for judicial review and supported by substantial evidence.

I.

The majority erroneously concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for giving minimum weight to portions of treating physicians Drs. Fairfax and Benjamin's opinions. "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be

given] controlling weight." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)). To reject a treating physician's uncontradicted opinion, "an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When the ALJ does not afford a treating physician's opinion controlling weight because "it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(3)-(4). Those factors include the length and frequency of treatment by the treating physician; the amount of relevant evidence that supports the opinion and the quality of the explanation; the consistency between the opinion and the medical record as a whole; the treating physician's speciality; and the treating physician's familiarity with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6).

The majority contends that the ALJ only cited to two places in the record in disregarding portions of treating physicians Drs. Fairfax and Benjamin's opinions. Maj. Op. at 3. The majority ignores that, immediately prior to turning to Drs. Benjamin and Fairfax's opinions, the ALJ assessed the entirety of Salaz's daily living capabilities and her treatment history in the medical record. ER II 18-20. The ALJ refers to that medical record, which was already analyzed, in discussing

2

the weight to afford Drs. Benjamin and Fairfax's opinions. ER II 21.

Dr. Fairfax opined that Salaz could not work for eight hours a day, five days a week on a regular and consistent basis due to fibromyalgia and chronic narcotic treatment; that Salaz could only sit three to four hours, and walk or stand for less than two hours, in an eight-hour workday; could stoop frequently; and could lift and carry between 15 and 20 pounds of weight. ER IV 605. Because of its consistency with the record, the ALJ credited the exertional, environmental, and postural limitations in Dr. Fairfax's opinion. ER II 21. In fact, the RFC reflects that the ALJ even added additional exertional and postural limitations: the ALJ limited Salaz to sedentary work, which requires lifting and carrying no more than 10 pounds at a time, and found that Salaz could only occasionally stoop. ER II 17; 20 C.F.R. § 404.1567(a).

The ALJ, however, did not credit that portion of Dr. Fairfax's opinion that concluded Salaz could only stand and walk for less than two hours in an eight-hour workday. ER II 21. In explaining why she discounted this portion of the opinion, the ALJ stated that Dr. Fairfax had consistently encouraged Salaz to exercise regularly, which is inconsistent with a determination that Salaz is incapable of standing for more than two hours in an eight-hour workday. ER II 21, *see* ER IV 437, 456, 449, 447, 577, 448. Treatment providers also generally found that Salaz

presented with a normal gait, good range of motion in all of her extremities, and no neurological deficits. ER II 19, *see* ER III 284, 397-99, ER IV 433-34, 438, 442, 448-50, 453, 456, 574, 577, 587, 593-94. In addition, Salaz, in her daily activities, reported the ability to manage a household, care for three young children, vacuum, do dishes, attend church, drive, and move. ER II 19, *see* ER I 41, ER II 213-16, ER III 289. The ALJ, having highlighted medical evidence and testimony of daily living that was inconsistent with Dr. Fairfax's conclusion that Salaz was limited to standing and walking for two hours a day, provided clear and convincing reasons to reject that portion of Dr. Fairfax's opinion.

Similarly, the ALJ discounted those portions of Dr. Benjamin's opinion that were inconsistent with the record. Dr. Benjamin opined that Salaz would experience IBS symptoms three times per day and 90 times per month, with an average duration of three hours per episode; that stress and physical activity would increase her symptoms of fibromyalgia and IBS; and that she had a "moderately severe" degree of restriction. ER IV 495-96, 603-04. The ALJ credited the environmental limitations expressed by Dr. Benjamin. ER II 21. The ALJ did not afford controlling weight to the remainder of Dr. Benjamin's opinion.

The ALJ reasoned that the extreme limitations posited by Dr. Benjamin were contradicted by "the evidence which establishes that claimant is less restricted in

4

her abilities," which includes Salaz's report of her daily activities, such as managing a household, driving, and running her own business. ER II 19, 21; *see* ER I 41, ER II 213-16, ER III 289. The ALJ also explained that Salaz's treatment records did not contain persistent complaints or discussion of symptoms of IBS to the extent presented in Dr. Benjamin's opinion. ER II 21. During eight visits to Dr. Benjamin, Salaz did not report that she was experiencing significant IBS symptoms, let alone that her IBS, coupled with her fibromyalgia symptoms, incapacitated her for three hours. ER II 19-20, ER IV 466, 469-73, 495, 599, 600. The ALJ also found no basis for the portion of Dr. Benjamin's opinion that stated stress made Salaz's symptoms worse. ER II 21. In addition, Salaz's colonoscopy in October 2008 revealed no significant abnormality and no active colitis. ER II 20, ER III 381. The ALJ, having supported her decision to discount a portion of Dr. Benjamin's opinion with evidence from the medical record and Salaz's testimony of daily living, provided clear and convincing reasons for not affording a portion of Dr. Benjamin's opinion controlling weight. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (concluding that an ALJ may reject a treating physician's opinion that is unsupported by the record as a whole or by objective medical evidence).

II.

Contrary to the majority's conclusion, the ALJ provided substantial evidence from the record in concluding that Salaz's symptom testimony was not credible. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ determines whether the claimant "has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036, quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Then, if the claimant meets the first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of the symptoms by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). In weighing the claimant's credibility, the ALJ may consider at least the following factors: claimant's reputation for truthfulness; inconsistencies between the claimant's testimony and her conduct; claimant's daily activities, including her work record; and testimony from physicians and third parties concerning the nature and severity of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).

Salaz testified that she was unable to work due to fibromyalgia pain, fatigue,

6

IBS symptoms, and numbness and tingling in her hands. The ALJ discounted the alleged severity of Salaz's symptom testimony by highlighting contradictory evidence from Salaz's medical history and her daily living activities.

In explaining how Salaz's testimony contradicted the medical evidence, the ALJ emphasized the following with respect to Salaz's reports of pain and IBS symptoms: in July 2006, Salaz had only slight swelling in her left hand with no pitting, and a good range of motion in the joints of her upper and lower extremities, ER II 19, *see* ER IV 433; in February 2007, Salaz walked with a normal gait, demonstrated full range of motion in her neck without pain, and could make a full fist and open up with no loss of motion, ER II 20, *see* ER III 284; in April 2008, Salaz had lost sixty five pounds, was much more capable of caring for herself and her children, underwent a colonoscopy with normal results, and her gastrointestinal pathology report noted that there was no significant abnormality, and no active, chronic, or microscopic colitis, ER II 20; in January 2010, Salaz presented with no active synovitis and no objective muscle weakness, ER II 20, *see* ER IV 448; in January 2011, upon examination, no objective evidence of muscle weakness or gross neurological deficits were found, ER II 20, *see* ER IV 586-87; and in April 2011, Salaz had X-rays taken of her bilateral hips, shoulders, and knees which were all unremarkable, ER II 20, *see* ER IV 593.

The ALJ also noted how Salaz's testimony was inconsistent with the results from her treatment. ER II 19. Salaz's treatment was conservative in nature and consisted mainly of pain management and follow-up care. ER II 19, see ER IV 432-42, 453, 456, 447-50, 577, 587. She also regularly reported that she improved with medication and adjustments to her treatment. ER II 19, *see* ER IV 436, 438, 448, 456. There was no evidence that she received physical therapy or other alternative rehabilitative treatment for her symptoms. ER II 19. Salaz reported that after she underwent surgery for carpal tunnel syndrome and ear issues that the surgeries relieved the symptoms. ER II 19-20, *see* ER III 287. Two weeks after her carpal tunnel surgery in April 2007, she reported that she was "doing very well" and, in June 2007, Dr. Dinowitz noted that Salaz was "very healthy." ER II 20, *see* ER III 287-88. After Salaz had surgery on her ear for cholesteatoma, her hearing returned to baseline. ER II 20.

With respect to her fibromyalgia, both Salaz and her physicians stated it was being successfully combated with treatment: in December 2006, Salaz reported that she was "doing fairly well" with regard to her fibromyalgia and Dr. Fairfax noted that she was stable on her medication, ER II 19, *see* ER IV 436; in May 2007, Dr. Fairfax again noted that Salaz's fibromyalgia was stable, ER II 20, *see* IV 438; in April 2008, Dr. Fairfax reported that Salaz was doing well on her pain

8

medications, ER II 20, *see* ER IV 456; and, in January 2010, Salaz admitted that the current treatment plan for her fibromyalgia had been beneficial, ER II 20, *see* ER IV 448.

The ALJ also highlighted the inconsistencies between Salaz's subjective symptom testimony and her reports of daily living. ER II 19, *see* ER I 41, ER II 213-16, ER III 289, ER IV 436. The majority concludes, however, that the ALJ failed to establish the extent of Salaz's responsibilities at home in finding that the evidence of Salaz's daily activities undercut the credibility of her testimony. While the ALJ may have been able to interpret the evidence differently, this court reviews the ALJ's decision to determine only whether or not it is supported by substantial evidence in the record, not to second guess the ALJ's interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [reviewing courts] must defer to the ALJ's conclusion"). The ALJ's discussion of Salaz's daily activities highlights the inconsistency between the evidence and her symptom testimony, and provides further evidence for the ALJ's decision to discredit the symptom testimony. *See id.* at 1196 (upholding ALJ's decision to reject symptom testimony because it was inconsistent with claimant's reported daily activities of caring for pets, walking, going out for coffee, and socializing);

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (concluding that claimant's pain testimony was undermined by her daily activities of caring for two children, cooking, housekeeping, laundry, shopping, and ability to attend therapy).

Ultimately, the contradictions between the objective medical evidence and Salaz's symptom testimony support the ALJ's conclusion, based on substantial evidence from the record, that Salaz's subjective symptom testimony was not credible. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1115, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony").

## III.

Lastly, the ALJ's RFC assessment was not only sufficiently specific for judicial review, but also supported by substantial evidence in the record. Salaz contends that the RFC determination is not supported by substantial evidence in the record because the ALJ failed to set forth a function-by-function assessment of Salaz's residual functional capacity. Salaz argues further that the RFC determination is deficient because the ALJ needed to make specific findings as to the length of time Salaz can sit, stand, walk, the amount of weight she can lift and carry, her need for bathroom breaks, restroom access, and hand limitations.

The ALJ found that Salaz:

had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations; the claimant is limited to occasional climbing of ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she is limited to frequent bilateral handling and fingering; she needs to avoid concentrated exposure to extreme temperatures, noise and hazards such as machinery and unprotected heights; and she is limited to a work environment with a moderate noise level.

The ALJ's reference to the definitions of sedentary work in 20 C.F.R. §§ 404.1567(a) and 419.967(a) provide the type of specific limitations which Salaz seeks. By definition, sedentary work involves "lifting no more than 10 pounds at a time" and "periods of standing or walking should generally total approximately 6 hours of an 8-hour workday." Social Security Regulation 83-10p; 20 C.F.R. § 404.1567(a). The ALJ included these weight limitations in her hypothetical to the vocational expert. The ALJ also addressed Salaz's limitations with respect to her hands, finding that Salaz "is limited to frequent bilateral handling and fingering."

The ALJ, moreover, was not required to formulate a function-by-function analysis because performing such an analysis "for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss,* 427 F.3d at 1217. Again, the ALJ's decision not to credit Salaz's symptom testimony and portions of the treating physicians' opinions was supported by substantial evidence in the record. The ALJ had already discounted

11

Salaz's testimony regarding her IBS and Dr. Benjamin's opinion as to the severity of her IBS symptoms due to Salaz's reports of her daily activities and her treatment history for IBS. ER II 19, *see* ER I 41, ER II 213-16, ER III 289, ER IV 466, 469-73, 599, 600. As a result, Salaz's contention that the RFC is not supported by substantial evidence because the ALJ failed to perform a function-by-function assessment and was not sufficiently specific for judicial review lacks merit.

## IV.

In conclusion, I dissent from the majority opinion because the ALJ provided clear and convincing reasons for rejecting those portions of Drs. Fairfax and Benjamin's opinions that were inconsistent with the medical record and Salaz's reports of daily living; substantial evidence in the record supports the ALJ's conclusion that Salaz's symptom testimony was not credible; and the ALJ's RFC determination was sufficiently specific for judicial review and supported by substantial evidence in the record.